**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **DANIELLA SPRINGER, WILLIAM MOORE, and ARIEL VOLQUEZ,** individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**JOHNSON & WALES UNIVERSITY,**<br><br>Defendant. | **CLASS ACTION**<br><br>**CASE NO. 1:24-CV-00399-JJM-PA** |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs[1] respectfully submit this Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards, supported by a Joint Declaration of Settlement Class Counsel ("Joint Decl."), attached as ***Exhibit A***, and the Declaration of the Settlement Administrator ("Admin. Decl."), attached as ***Exhibit B***. The Court should enter the Final Approval Order: (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(3); (3) confirming Plaintiffs' appointment as Settlement Class Representatives; (4) confirming the appointments of Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, Leanna A. Loginov of Shamis & Gentile P.A., and Grayson Wells of Stranch, Jennings & Garvey, PLLC as

[1] All capitalized terms used herein shall have the same meanings as those defined in the Settlement Agreement, which was attached as Exhibit A to Plaintiffs' Motion for Preliminary Approval. ECF No. 26-1.

Settlement Class Counsel, pursuant to Rule 23(g)(1); (5) confirming the appointment of Epiq Class Action and Claims Solutions, Inc., as Settlement Administrator; (6) awarding Settlement Class Counsel attorneys' fees and costs; (7) awarding each Settlement Class Representative a Service Award; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

## I. INTRODUCTION

On January 5, 2026, the Court preliminarily approved the Settlement. ECF No. 27. The Settlement provides Settlement Class Member Benefits for Plaintiffs and Class Members via a non-reversionary, all-cash Settlement Fund of $454,200.00, from which Settlement Class Members with Valid Claims may elect to receive: (a) up to $1,000.00 for documented losses; or (b) an alternate cash payment in the amount of $50.00 (subject to a *pro rata* increase or decrease based on the number of Valid Claims); and (c) up to three years of credit monitoring from CyEx Identity Defense Complete. The Settlement Fund will also be used to pay all Settlement Administration Costs, any Court-awarded attorneys' fees and costs to Settlement Class Counsel, and any Court-awarded Service Awards to the Settlement Class Representatives. Plaintiffs now move the Court for Final Approval and apply for an award of attorneys' fees and costs to Settlement Class Counsel and Service Awards to the Settlement Class Representatives. The Settlement satisfies all Final Approval criteria. Currently, there are no objections to the Settlement and only one opt-out request from the Settlement Class. Admin. Decl. ¶ 32. This response affirms the Court's initial conclusion, outlined in the Preliminary Approval Order, that the Settlement is fair, reasonable, and adequate. Settlement Class Counsel evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the Settlement fairly resolves their

differences. Consequently, the Court should grant Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

## II. BACKGROUND AND PROCEDURAL HISTORY

Defendant is a private, nonprofit university offering undergraduate and graduate degree and non-degree programs. Joint Decl. ¶ 3. On or around September 19, 2024, a third party acting on behalf of Defendant began sending notice letters to individuals advising them that the university "learned of activity in our network that happened without our permission. In response, JWU took immediate steps to secure its systems and promptly launched an investigation. In so doing, JWU engaged digital forensics and incident response specialists to determine the nature and scope of the incident and to identify any information that may have been accessed or acquired without authorization as a result. On August 21, 2024, JWU learned that personal information of yours may have been accessed in connection with the incident. Please note that JWU has no evidence of the misuse or attempted misuse of any potentially accessed information." *Id*. The information that may have been potentially accessed and exfiltrated includes personally identifiable information (*e.g.*, names and Social Security numbers). *Id*.

As a result of the Security Incident, this Action was initiated. Joint Decl. ¶ 4. On November 15, 2024, Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") in the United States District Court of the District of Rhode Island, alleging: (1) negligence and negligence *per se*; (2) breach of implied contract; (3) invasion of privacy, intrusion upon seclusion; and (4) unjust enrichment/quasi contract. ECF No. 13. On April 30, 2025, the Court dismissed Plaintiffs' privacy and unjust enrichment claims. ECF No. 22. Defendant denies all liability and wrongdoing and denies that the case could be certified absent settlement. Joint Decl. ¶ 4; Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") ¶¶ 9, 130.

The Parties met and conferred on several occasions to discuss the merits of the claims and on August 7, 2025, the Parties reached an agreement in principle on the material terms of a proposed class action settlement. Joint Decl. ¶ 5. The agreement was reached through arms'-length negotiation and advocacy by counsel on behalf of the Parties. *Id.* ¶ 6. The parties did not negotiate attorney's fees or a service award until after they had agreed on benefits for the Settlement Class. *Id.* ¶ 7.

On August 7, 2025, the Parties signed a Confidential Settlement Term Sheet. Over the following weeks, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to a settlement administrator. *Id.* ¶ 8. Eventually, on December 11, 2025, the Parties executed the Settlement Agreement. *Id.* ¶ 9; ECF No. 22-2. Thereafter, on December 30, 2025, Plaintiffs filed their unopposed Motion for Preliminary Approval. *Id.* The Court granted Preliminary Approval of the Settlement on January 5, 2026. ECF No. 27.

## III. SUMMARY OF THE SETTLEMENT AND BENEFITS

### A. Settlement Class

The Settlement Class has approximately 22,710 members and is defined as follows:

> All persons on the list of persons to whom Johnson & Wales University arranged to have sent a notice of the 'Security Incident,' [i.e., the security incident identified in the letter dated September 19, 2024, sent to Plaintiffs and the subject of the Amended Complaint], excluding those persons identified as being excluded in the Amended Complaint.

Agreement ¶ 63. The Settlement Class specifically excludes Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members. *Id.*

### B. Settlement Consideration

The Settlement Fund shall be a non-reversionary common fund funded by Defendant in the amount of $454,200.00, which shall be deposited into an escrow account. *Id.* ¶¶ 68; 73. The Settlement Fund will be used to pay for the following: (a) Notice and Administrative Expenses and costs; (b) Fee Award and Expenses, as approved and awarded by the Court; (c) Service Awards, as approved and awarded by the Court; (d) Cash Payments to Settlement Class Members; (e) Credit Monitoring services to Settlement Class Members; and (f) transfer of the Remainder Funds to Cy Pres following the preceding payments. *Id.* ¶ 76. The Settlement Class Members may claim one or more of a variety of awards from the Settlement Fund, which may be prorated based on the number of claims made. *Id.* ¶ 79.

**1. *Cash Payments*** – Settlement Class Members may elect either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash:

**a. Cash Payment A – Documented Losses.** Settlement Class Members may claim compensation for Documented Losses ("Cash Payment A") of up to $1,000.00 per Settlement Class Member with third-party documentation and a sworn affidavit attesting to the losses if: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was incurred after the date of the Security Incident; (iii) the loss was more likely than not caused by the Security Incident; and (iv) the loss was incurred after the date of the Security Incident. *Id.* ¶ 79(i). If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected. *Id.*

**b. Cash Payment B – Alternate Cash.** As a mutually exclusive alternative to Cash Payment A, a Settlement Class Member may make a claim to receive a cash

payment in an amount of $50.00 ("Cash Payment B"), which is subject to a *pro rata* adjustment (i.e., increase or decrease) based on the number of valid Cash Payment B claims submitted. *Id.* ¶ 79(ii).

**2. *Credit Monitoring*** – In addition to electing Cash Payment A or Cash Payment B, all Settlement Class Members may claim up to three years of credit monitoring from CyEx Identity Defense Complete. *Id.* ¶ 79(iii). A Settlement Class Member may make this election regardless of whether he or she makes a claim for cash payment. *Id.*

**3. *Pro Rata Adjustments on Cash Payments and Funds Remaining After Distribution* -** The Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring, then for Cash Payment A, and then for Cash Payment B. *Id.* ¶ 79. In the event the amount of Approved Claims within a category exceeds the available Settlement Fund, then the amount of the Cash Payment A or Cash Payment B will be reduced *pro rata* for each valid claimant. *Id.* Any Remainder Funds will be thereafter designated for the Cy Pres recipient. *Id.* To receive any relief, Settlement Class Members must submit a valid and timely claim to the Settlement Administrator. *Id.* All payments may be prorated based on the number of claims made. *Id.*

**4. *Service Awards, Attorneys' Fees, and Costs*** – The Agreement calls for a reasonable Service Award for the three Settlement Class Representatives of $2,500.00 each, for a total of $7,500.00. *Id.* ¶ 128. These awards are meant to compensate them for their efforts on the Settlement Class's behalf, including serving as named Plaintiffs, assisting in the Action's investigation, maintaining contact with Settlement Class Counsel, reviewing case documents, and answering Settlement Class Counsel's questions. Joint Decl. ¶ 28. As explained in the Agreement and the Notices to the Settlement Class, Settlement Class Counsel also seek an attorneys' fees and

costs award not to exceed one-third of the Settlement Fund ($151,400.00). Agreement ¶ 127; Joint Decl. ¶ 31. The Parties negotiated Plaintiffs' Service Award and an award of Attorneys' Fees and costs separately from the Benefits and Cash Payments described above. *Id*. ¶ 129; Joint Decl. ¶ 32. To date, not a single Settlement Class Member has objected to the amounts sought. Admin Decl. ¶ 32.

**5.** ***Releases*** – The Releasing Parties fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from any and all Released Claims, including but not limited to any state law or common law claims arising out of or relating to the Security Incident that the Releasing Parties may have or had. Agreement ¶¶ 124-126.

**6.** ***Settlement*** – Class members who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims and will not obtain any benefits, including any Settlement Class Member Benefit, under the Settlement. *Id*.

## IV. NOTICE PROGRAM, CLAIMS PROCESS, OPT-OUTS AND OBJECTIONS

### A. The Notice Program Satisfied Rule 23 and Due Process

The Settlement Administrator implemented the Notice Program in full compliance with the Settlement Agreement and the Preliminary Approval Order. *See* Admin. Decl. ¶ 40. Commencing on February 4, 2026, Postcard Notices were sent to 22,664 Settlement Class Members, which includes all those for whom Defendant provided a mailing address or for whom the Settlement Administrator could determine an updated address. *Id*. ¶¶ 24-25. Postcard Notices returned as undeliverable were re-mailed to new addresses found using a reasonable address trace service. *Id*. ¶ 26. As of March 20, 2026, the Settlement Administrator expects the Notice Program would have reached approximately 99 percent of identified Settlement Class Members (22,574), far exceeding the Federal Judicial Center's standard of 70 to 95 percent, and consistent with other court-

approved, best practicable notice programs. *Id.* ¶ 28; *see* FEDERAL JUDICIAL CENTER, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class).

The Postcard Notice clearly and concisely summarizes the Settlement and the Settlement Class's legal rights and it directs Settlement Class members to the Settlement Website for additional information, including the Long Form Notice, Settlement Agreement, and details on the Claim Process. Admin Decl., Attachment 3. The Long Form Notice, which details the procedures to opt-out or object to the Settlement or to make a Claim, is also available on the Settlement Website and by mail upon a Settlement Class member's request. *Id*., Attachment 4.

The Settlement Website, https://jwusecurityincident.com/, which went live on February 3, 2026, contains a summary of the Settlement, includes important documents and relevant dates and information, and serves as a portal for Settlement Class Members to file Claim Forms. *Id*. ¶ 29. As of March 20, 2026, there have been 987 unique visitor visits to the Settlement Website. *Id*. Additionally, on February 3, 3036, the Settlement Administrator established a toll-free telephone line (1-877-745-7766) for Settlement Class members to call with Settlement-related inquiries. *Id*. ¶ 30. As of March 20, 2026, there have been 54 calls to the tollfree line, and 42 callers have been connected to live operators. *Id*. To satisfy the requirements of due process, "[t]he court must direct notice in a reasonable manner to all members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004). "The notice program need not be perfect, but it must provide the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Medoff v. CVS Caremark Corp.*, No. 09-cv-554-JNL, 2016 U.S. Dist. LEXIS 19135, at *23 (D.R.I. Feb. 17, 2016) (quoting Fed. R. Civ. P. 23(c)(2)(B)).

Here, the Notices adequately inform the Settlement Class of the nature of the Action, the Settlement Class definition, the claims at issue, the binding effect of Final Approval and class judgment, and the Settlement Class members' rights to object, opt-out, and/or enter an appearance through an attorney. Admin Decl., Attachments 3-5. The forms of Notice utilized clear and concise language that is easy to understand. Moreover, the Settlement Administrator—with the Parties' assistance—is taking all reasonably necessary measures to ensure Notice reaches as many Settlement Class members as reasonably possible. Thus, the Notice provided has been consistent with the Notice Program the Court approved in its Preliminary Approval Order, satisfies due process considerations of the United States Constitution, and weighs in favor of Final Approval. Joint Decl. ¶ 22.

**B. Claims, Opt-Outs, and Objections**

The Claim Process was structured to give all Settlement Class members adequate time to review the Settlement terms, submit Claims, and decide whether to opt-out of or object to the Settlement. Joint Decl. ¶ 23. The Opt-Out, Objection Deadlines, and Claim Form Deadlines are April 6, 2026[2]. Admin Decl. ¶¶ 32, 34. As of March 20, 2026, the Settlement Administrator has received 1,122 Claim Forms, one opt-out requests, and zero objections. *Id.* Settlement Class Counsel will update the Court with the final Notice Program and Claim Process results at the Final Approval Hearing, including responding to any additional opt-outs or objections, if filed.

[2] Defendant disagrees with the Claim Form Deadline challenging that pursuant to this Court's order granting Preliminary Approval of Class Action Settlement the Claim Form Deadline is April 5, 2026. (ECF No. 27). However, pursuant to Rule 6 of Federal Rules of Civil Procedure, a deadline that falls on a Saturday, Sunday, or legal holiday is moved to the next day that is not a Saturday, Sunday, or legal holiday. Furthermore, the Settlement Website, which Defendant approved the substance of, lists the Claims Deadline as April 6, 2026. Moreover, the Claims Deadline is the date by which claim forms must be postmarked. S.A. ¶ 18. Plaintiffs position is that it is unreasonable to have a "postmarked by" deadline fall on a day the post office is closed.

## V. SETTLEMENT CLASS CERTIFICATION

For settlement purposes only, the Court's Preliminary Approval Order preliminarily certified the Action as a class action for the Settlement Class, finding prerequisites of ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority were satisfied pursuant to Rule 23(a) and (b)(3), and that the Settlement Class should be certified. ECF No. 27, at 3-4. The Court appointed Plaintiffs as Settlement Class Representatives pursuant to Rule 23(e)(2)(A), and Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, Leanna A. Loginov of Shamis & Gentile P.A., and Grayson Wells of Stranch, Jennings & Garvey, PLLC as Settlement Class Counsel pursuant to Rule 23(g)(1). The Court also appointed Epiq as the Settlement Administrator and approved the Notice Program and Claim Process. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. For efficiency, Plaintiffs incorporate by reference their Settlement Class certification arguments from the Motion for Preliminary Approval. ECF No. 26, § V(A.).

## VI. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. Rule 23(e)(2)'s Factors Weigh in Favor of Final Approval

As a matter of public policy, settlement is a highly favored means of resolving disputes—particularly in complex cases where substantial judicial resources can be conserved by avoiding litigation. *See U.S. v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000); *see also Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 (1st Cir. 1983) (quoting Pearson v. Ecological Sci. Corp., 522 F.2d 171 (5th Cir.1975)) (Settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits."); *Jean-Pierre v. J&L Cable TV Servs.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (quoting In re Lupron Mktg. and Sales Practices Litig., 228 F.R.D. 75, 88 (D. Mass 2005))

("[T]he law favors class action settlements[.]"); *Lazar v. Pierce*, 757 F. 2d 435, 440 (1st Cir. 1985) ("[W]e should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved[.]"). Class action settlements must be approved by the Court pursuant to Federal Rule of Civil Procedure 23(e). Rule 23(e)(2) sets forth the following final approval factors the court must consider when determining if the class action settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Jean-Pierre*, 538 F. Supp. 3d at 212-13. Considering these factors, the Settlement terms warrant Final Approval. The proposed Settlement is within the range of reasonableness and meets the criteria that is identified in Rule 23(e). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002).

"First and foremost, '[i]f the parties negotiated at arm's length and conducted sufficient discovery, [this court] must presume the settlement is reasonable.'" *Medoff*, 2016 U.S. Dist. LEXIS 19135, at *6 (quoting *Howe v. Townsend* (*In re Pharm. Indus. Average Wholesale Price Litig.*), 588 F.3d 24, 32-33 (1st Cir. 2009)). Here, after the Parties exchanged information sufficient to assess the strengths and weaknesses of their positions, the Settlement was negotiated at arm's

length. Joint Decl. ¶¶ 6, 33. The Settlement was indisputably the result of an adversarial, arm's-length negotiation.

The Settlement relief satisfies the adequacy requirement. Settlement Class Members benefit directly from the Settlement, including through cash compensation and up to three years of Credit Monitoring. Agreement ¶ 79. The Settlement's cash and credit monitoring benefits are guaranteed, whereas the chances of prevailing on the merits are uncertain. Joint Decl. ¶ 15.

Plaintiffs faced significant risks and costs should they have continued to litigate. Data breach cases are inherently complex, with novel issues and rapidly evolving laws posing substantial hurdles even at the pleading stage. *See, e.g.*, *Hashemi v. Bosley, Inc.*, No. 21-cv-946, 2022 U.S. Dist. LEXIS 210946, at *9 (C.D. Cal. Nov. 21, 2022) (explaining that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury); *Gordon v. Chipotle Mexican Grill*, Inc., No. 17-cv-01415- CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) (Data breach cases . . . are particularly risky, expensive and complex" due at least in part to the cutting-edge, innovative nature of data breach litigation and the rapidly evolving law; *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-MD-2800, 2020 U.S. Dist. LEXIS 118209, at *240 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom.* (in data breach "[t]he law . . . remains uncertain and the applicable legal principles have continued to evolve"). For these reasons, data breach cases like this one generally face substantial class certification hurdles. *See, e.g., In re Blackbaud, Inc.*, Customer Data Breach Litig., No. 3:20-MN-02972-JFA, 2024 U.S. Dist. LEXIS 86740, at *93 (D.S.C. May 14, 2024) (denying class certification after concluding proposed class and sub-classes were not ascertainable); *In Re: Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA,

2024 U.S. Dist. LEXIS 234064 , at *47 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed motion for class certification); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification). Maintaining class certification is often an equally challenging hurdle. *See e.g., Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. Aug. 18, 2023) (decertifying classes). Further, if litigation continues, Defendant would vigorously defend, and the litigation could potentially span for years, given the many arguments available to Defendant as to the claims on the merits and against class certification. Joint Decl. ¶ 18. Thus, Plaintiffs' likelihood of success at trial is far from certain, and the recovery here is more than adequate under the circumstances. *Id.*

Plaintiffs would also need to prevail on a class-wide basis after a motion for summary judgment and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. *Id.* ¶ 17. The path to a class-wide monetary judgment remains unpaved, particularly in the area of damages. *See, e.g., S. Indep. Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 U.S. Dist. LEXIS 40036, at *3-4 (M.D. Ala. Mar. 13, 2019) (ruling under *Daubert* that causation not satisfied for class certification in data breach action). Indeed, the damages methodologies remain largely untested in disputed class certification settings and unproven in front of a jury. Joint Decl. ¶ 17.

Time was also not on the Settlement Class Members' side. While the Parties would be litigating the foregoing issues, potentially for years to come, Settlement Class Members would not receive Settlement Class Member Benefits, including the protection of Credit Monitoring offered by the Settlement. *Id.* ¶ 18. Thus, a reasonable settlement is more practical than facing the risks of no recovery at all after years of litigation.

In contrast to the risk, cost, and delay posed by proceeding to trial, if it is approved, the Settlement will provide defined relief to the Settlement Class. *Id.* ¶ 18. It ensures Settlement Class Members with Valid Claims will receive Cash Payments and/or Credit Monitoring that may not have been available at trial. *Id.* Based on the foregoing, it is Settlement Class Counsel's well-informed opinion that, given the uncertainty and further substantial risk and expense of pursuing the Action through contested class certification proceedings, trial and appeal, the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.* ¶ 27. The Agreement treats Settlement Class Members equitably. The Settlement Class Members are all able to select from the two above-described options to obtain the benefit best tailored to their individual circumstances and they are all eligible to elect the same Credit Monitoring benefit as well. Plaintiffs and Settlement Class Counsel have represented the Settlement Class and completed an arm's length negotiation that secured adequate relief; Settlement Class Members are treated equitably under the Settlement. The Court should therefore approve this Settlement.

### B. The *Grinnell* Factors, or a Similar Analysis, Also Weigh in Favor of Final Approval

Courts in the First Circuit also consider the following "*Grinnell*" factors for final approval:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Del Sesto v. Prospect CharterCARE, LLC*, C.A. No. 18-328 WES, 2019 U.S. Dist. LEXIS 175173, at *10-11 (D.R.I. Oct. 9, 2019) (Smith, J.) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)); *see also Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240-41 (D.R.I. 2012) (Lisi, J.) (same); *In re Loestrin 24 Fe Antitrust Litig.*, Master File No. 1:13-

md2472-S-PAS, 2020 U.S. Dist. LEXIS 161552, at *31-32 (D.R.I. Sept. 1, 2020) (same); *see also In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12- MD-2320-PB, 2015 U.S. Dist. LEXIS 154602, at *29 (D.N.H. Nov. 16, 2015) ("Courts in this circuit, however, have often relied on the Second Circuit's *Grinnell* factors, or some variation on those factors.").

Courts, however, have broad discretion to apply fewer factors where appropriate. *Del Sesto*, 2019 U.S. Dist. LEXIS 175173, at *11 ("[A]lthough "[t]he case law offers 'laundry lists of factors' pertaining to reasonableness . . . 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'"). For example, the court in *Colgate-Palmolive Softsoap* noted, "Although I have discretion to apply *Grinnell* verbatim, I employ a more concise list":

> As such, I address the following considerations in turn: (1) comparison of the proposed settlement with the likely result of continued litigation; (2) risk, complexity, expense and duration of the case; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

2015 U.S. Dist. LEXIS 154602, at *29. These factors are considered below.

#### 1. *The Comparison of the Proposed Settlement with the Likely Result of Litigation*

This factor is difficult in that there is little to no empirical evidence to determine how a jury would react to the claims at issue. To the undersigned counsel's knowledge, no data breach class action has ever come to trial. Moreover, as discussed supra, the rapidly evolving world of data breach litigation demonstrates that there is substantial risk that this matter would ever get to trial.

"While it is possible to hypothesize about larger amounts that might have been recovered. . . '[t]he evaluating court must . . . guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'" *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 97-98 (D. Mass 2005) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (echoing the maxim that settlements are compromises and noting that "[t]he class members' . . . worst-case scenario, and a plausible one, is that they would receive no damages award at all").

Here, despite the serious risks of continued litigation, which also factors into the sixth element, including the risk of no recovery at all, the Settlement offers concrete relief to the Settlement Class. The Settlement Class Members can choose from either reimbursement for documented losses of up to $1,000.00 or a *pro rata* cash payment—in addition to up to three years of valuable Credit Monitoring. *Cf. Bezdek*, 79 F. Supp. 3d at 346 (determining, after noting the obstacles facing the class members if they were to continue litigating the case that "[t]he relatively modest settlement payout that has crystallized following notice is a preferable outcome for class members").

**2. *Reaction of the Class to the Settlement***

The Settlement has received a positive reception from the Settlement Class. The 1,122 Claim Forms submitted thus far represent a roughly 4.9% claims rate. Admin Decl. ¶ 34. This already exceeds the claims rates seen in many data breach class actions. *See, e.g., In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 U.S. Dist. LEXIS 65200, at *71 (E.D. Pa. Apr. 9, 2024) (2.56% claims rate "actually compares favorably to the claims rates in other data breach class actions");

*Carter*, 2023 U.S. Dist. LEXIS 210744 at *15 (1.6% claims rate "is in line with claims rates in other data breach class action settlements" and collecting cases with claims rates between 0.83% and "about two percent"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claims rate reflects a positive reaction by the class). As such, the claims rate should be seen as a favorable sign that the Settlement Class approves of this Settlement.

Likewise, "the lack of any serious objection to the settlement agreement from members of the class weighs in favor of approving the settlement." *Medoff*, 2016 U.S. Dist. LEXIS 19135, at *6; *see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."). Here, out of over 22,710 Settlement Class Members, no one has objected to the Settlement so far, and only one has requested to opt-out. Admin Decl. ¶ 32. This reaffirms the Court's preliminary conclusion that the Settlement is fair, reasonable, and adequate.

### 3. *Stage of the Litigation and the Amount of Discovery Completed*

Like the third *Grinnell* factor, this element involves "the parties' knowledge of the strengths and weaknesses of the various claims in the case[.]" Indeed, "the Court need not find that the parties have engaged in extensive formal discovery to approve the settlement. Rather, [t]he Court must find that counsel had sufficient information to act intelligently on behalf of the class." *Padro v. Astrue*, 11-CV-1788 CBA RLM, 2013 U.S. Dist. LEXIS 150494, at *15-16 (E.D.N.Y. Oct. 18, 2013) (internal citations and quotation omitted). The Parties had sufficient information to understand the strengths and weaknesses of their respective claims and defenses. Joint Decl. ¶ 33. The Court can thus "find that the parties had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and

experienced in consumer class action litigation, including [cases of this type].” *Bezdek*, 79 F. Supp. 3d at 348.

**4. *Quality of Counsel***

“Finally, in evaluating whether the settlement is fair, reasonable, and adequate, the Court also gives due weight to the judgment of class counsel.” *In re Equifax Inc. Customer Data Sec. Breach Litig.,* 2020 U.S. Dist. LEXIS 118209, at *176. As this Court found at Preliminary Approval, Settlement Class Counsel are “experienced and adequate counsel.” ECF No. 27 at 9. Settlement Class Counsel have pursued the Settlement Class’s interests in securing a Settlement bringing benefits, while avoiding the risks of continued litigation. To do so, they leaned on their extensive experience in data breach litigation and their detailed investigation of this particular matter. Joint Decl. ¶¶ 6, 26, 33. Defendant is represented by experienced counsel who are highly competent adversaries from well-respected law firms. *See Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (“Given the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results.”). This factor favors Final Approval.

**5. *Conduct of the Negotiations***

Here, the Agreement is clearly the product of good-faith arm’s-length negotiations and there is no evidence of fraud or collusion. After an exchange of information related to liability and damages and rigorous negotiations, the Parties negotiated a fair and reasonable settlement similar to or exceeding the value of other similar data breach class action settlements. Joint Decl. ¶¶ 6, 19, 26, 33. Thereafter, the Parties spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. *ld.* ¶ 33. There has been no fraud or collusion, and there are no agreements among the Settling Parties or their counsel apart from the Settlement Agreement. *ld.* ¶

14. Moreover, the proposed Settlement does not favor any Settlement Class member over any other. *ld.* ¶ 20. As noted above, "[i]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 32–33. Accordingly, this factor favors Final Approval.

#### 6. *Prospects of the Case, Including Risk, Complexity, Expense and Duration*

As discussed above with respect to the Rule 23(e)(2) factors, there is substantial risk and complexity in a consumer data breach action, and success for Plaintiffs is far from assured. In finding a similar factor favored approval in a data breach context, a court noted the following:

> The risks of litigation for both parties and the costs of proceeding to trial support a finding that the settlement is reasonable. As the plaintiffs point out, lengthy discovery, including the deposing of expert witnesses on damages, motions for summary judgment, and a motion for class certification would occur before final resolution could take place. The calculation of damages at trial is uncertain given that law in this area is developing.

*In re Novant Health, Inc.*, 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949, at *20 (M.D.N.C. June 17, 2024). Given the uncertainty in data breach litigation, a real likelihood of an appeal from the party that does not prevail could extend the time and expense for resolution beyond that which makes economic sense for the Plaintiffs and the Settlement Class. Joint Decl. ¶ 17. This factor favors Final Approval.

Because the Rule 23(e)(2) factors and the other factors courts in this District and Circuit follow are satisfied, Final Approval of the Settlement should be granted.

## VII. APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A. Legal Standard for Attorneys' Fees

Federal Rule of Civil Procedure 23(h) provides: "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties'

agreement." Under the common fund doctrine, "attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *Bezdek*, 79 F. Supp. 3d at 349 ("Attorneys in a certified class action may be awarded reasonable fees and costs."). When awarding attorneys' fees, the First Circuit allows computing attorneys' fees in common fund cases as a percentage of the fund, "subject, of course, to considerations of reasonableness," or by fashioning a lodestar. *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). However, the First Circuit in *Thirteen Appeals* emphasized that the "percentage of the fund" approach has many advantages in complex cases like this one and is the traditional approach. *Id.* at 305-07. Specifically, the First Circuit noted the percentage of the fund approach is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources, and "better approximates the workings of the marketplace." *Id.* at 307; *see also Carlson v. Target Enter.*, 447 F. Supp. 3d 1, 3 (D. Mass Mar. 23, 2020) ("In the First Circuit, the percentage of fund methodology . . . is favored and appropriate in common fund cases."); *accord In re Loestrin*, 2020 U.S. Dist. LEXIS 161552, at *31-32 (using the percentage of the fund method). There is no requirement to apply a lodestar analysis in a class action settlement. *See Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2013 U.S. Dist. LEXIS 130550, at *22-23 (D.R.I. Sept. 12, 2013) (citing Thirteen Appeals). Therefore, Settlement Class Counsel request that the Court use the percentage of the fund method.

**B. The Requested Attorneys' Fees Award is Fair and Reasonable**

Plaintiffs here seek Court approval of Class Counsel attorneys' fees of one-third of the cash $454,200.00 Settlement Fund ($151,400.00). Joint Decl. ¶ 31. This request is within the range of

attorneys' fee requests that have been approved in this District and within the First Circuit, including in similar data privacy class actions. *See Kondash v. Citizens Bank*, Case No. 18-cv00288-WES-LDA, 2020 U.S. Dist. LEXIS 241588, (D.R.I. Dec. 23, 2020) (finding fee of one-third of the Settlement Fund "eminently reasonable"); *In re Loestrin 24 Fe Antitrust Litig.*, 2020 U.S. Dist. LEXIS 125745, at *44-45 (approving fee of one-third of settlement fund as "fair, reasonable and appropriate compensation for the work done by [counsel] to create the Fund"); *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. June 6, 2025) (same); *In re Sovos Compliance Data Sec. Incident Litig.*, No. 1:23-cv-12100 (ECF No. 51) (D. Mass. July 23, 2024) (same); *Fiorentino v. Flosports, Inc.*, Case No. 1:22-cv-11502 (D. Mass. Mar. 5, 2024) (same); *Meaden et al. v. Harborone Bank*, Case No. 1:23-cv-10467-AK (D. Mass. Nov. 14, 2023) (same); *In re Solodyn Antitrust Litig.*, No. 14-md-2503, 2018 U.S. Dist. LEXIS 244677, at *11 (D. Mass. July 18, 2018) (same); *In re Asacol Antitrust Litig.*, No. 1:15-CV-12730-DJC, 2017 U.S. Dist. LEXIS 221904, at *18 (D. Mass. Dec. 7, 2017) (same); *In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2015 U.S. Dist. LEXIS 199792, 2015 WL 13908415, at *13-14 (D. Mass. May 20, 2015) (same); *Klein, et al. v. Bain Capital Partners*, LLC, et al., 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (same). "[N]early two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. Nov. 10, 2014).

Moreover, in the Preliminary Approval Order, the Court already found Plaintiffs' intention to seek no more than one-third of the Settlement Fund in attorneys' fees as reasonable. ECF No. 27, at 3-4. Since then, the Settlement Class's reaction to the robust and informative Notice Program has been positive, with a higher than typical claims rate and currently no objections to this award. As explained below, the one-third award remains reasonable.

### C. The Relevant Factors Considered by Courts in this Circuit Support the Requested Fees Award

When determining the reasonableness of attorneys' fees as a percentage of the fund award, the First Circuit has not endorsed a specified set of factors. However, courts in this Circuit generally consider "the size of the fund and the number of persons benefitted; the skill, experience, and efficiency of the attorneys involved; the complexity and duration of the litigation; the risks of the litigation; the amount of time devoted to the case by counsel; awards in similar cases; and public policy considerations." *In re Loestrin 24 Fe Antitrust Litig.*, 2020 U.S. Dist. LEXIS 125745, at *40 ("For guidance in establishing the reasonableness of a percentage-based fee award, courts in this Circuit have looked to the factors set forth in [*Goldberger*]."); *In re Neurontin*, 58 F. Supp. 3d at 170 (considering the same factors) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861 RGS, 2005 U.S. Dist. LEXIS 17456, at *12 (D. Mass. Aug. 17, 2005) (citing *Goldberger v. Integrated Res.*, Inc., 209 F.3d 43, 50 (2d Cir. 2000))). Each of these factors support the requested one-third fee as fair and reasonable.

#### 1. Size of the Fund and the Number of Persons Benefited

With any class action settlement, the results obtained are the most important. Settlement Class Counsel secured a $454,200.00 non-reversionary all cash Settlement Fund for the benefit of Plaintiffs and the Settlement Class. This amount equates to $20.00 per Settlement Class Member, a number that exceeds the results achieved in many other recent data breach settlements. *See*, *e.g.*, *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. June 6, 2025) (approving requested one-third fee award with settlement relief equating to $3.29 per class member); *In re Sovos Compliance*, 1:23-cv-12100 (ECF No. 51) (D. Mass. July 23, 2024) (approving requested one-third fee award with settlement relief equating to $7.14 per class member); *In re Loancare Holdings, Inc. Data Breach Litig.*, No. 8:22-cv-01472, 2024 U.S. Dist.

LEXIS 110789, at *11-12 (M.D. Fla. June 24, 2024) (approving requested one-third fee award with settlement relief equating to $2.50 per class member); *In re Forefront Data Breach Litig.*, No. 1:21-cv-00887, 2023 U.S. Dist. LEXIS 175848, at *29 (E.D. Wis. Mar. 22, 2023) (approving requested one-third fee award with settlement relief equating to $1.55 per class member). Thus, the Settlement Fund for this Settlement Class is sufficient to award a one-third fee award.

**2. Settlement Class Counsel's Skills, Expertise, and Efficiency**

In evaluating the skill and efficiency of class counsel, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek*, 79 F. Supp. 3d at 348, aff'd, 809 F.3d 78 (1st Cir. 2015). Indeed, Settlement Class Counsel's skill and experience in complex class action litigation weigh in favor of the requested attorneys' fee award. Settlement Class Counsel's background and the background of the supporting attorneys and staff of Ellzey Kherkher Sanford Montgomery, LLP, Shamis & Gentile P.A., and Stranch, Jennings & Garvey, PLLC demonstrate that Settlement Class Counsel is experienced in the highly specialized field of class action litigation—particularly data breach class action litigation—and are well-credentialed and equal to the difficult and novel tasks at hand. Joint Decl. ¶ 26 & Exs. 1-2. Settlement Class Counsel's attorneys' fee request is commensurate with that experience, which was leveraged here to procure the Settlement via early resolution of the Action.

In addition to the Settlement Fund amount, when looking at the quality of Settlement Class Counsel's representation, courts typically find the absence or near absence of objections from the class to the attorneys' fees request supports the reasonableness of those fees. *See Bezdek*, 79 F. Supp. 3d at 347 (observing the "overwhelmingly positive" reaction of the class, which yielded

only 23 optouts and 3 objections); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."). The Settlement Class' reaction thus far strongly suggests their support for the Settlement and the proposed attorneys' fee award.

### 3. Complexity and Duration of the Litigation

Settlement Class Counsel anticipated facing several challenges in prosecuting this Action, which factored into negotiating the valuable Settlement. Joint Decl. ¶ 17. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles. *See*, *e.g.*, *Pfeiffer v. Radnet, Inc.*, No. 2:20-cv-09553, 2022 U.S. Dist. LEXIS 125933, at *6-7 (C.D. Cal. Feb. 15, 2022) ("Historically, data breach cases have had great difficulty in moving past the pleadings stage and receiving class certification."); *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695, at *7 (C.D. Cal. Dec. 9, 2021) ("data breach class actions are among the riskiest and uncertain of all class action litigation due to the absence of direct precedent certifying data breach cases as class actions"); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *14 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky."). Thus, absent this Settlement, Settlement Class Members may never have secured relief, financial, or otherwise, and would have otherwise endured lengthy, expensive, and arduous litigation. *See* Joint Decl. ¶¶ 15-19. The litigation's complexity is not diminished by the fact that Settlement Class Counsel was able to reach a prompt and efficient settlement. By reaching this Settlement prior to dispositive motions or trial, Plaintiffs and Settlement Class Members avoid significant expense and delay and instead ensure a fair recovery for the Settlement Class. *See Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 U.S. Dist. LEXIS 44548,

at *14 (E.D.N.Y. Mar. 27, 2017) ("[T]he settlement provides certain compensation to the class members now, rather than awaiting an eventual resolution that would result in further expense without any definite benefit to class members[.]").

Accordingly, the novelty and complex nature of data breach class action cases supports the requested attorneys' fee award to reasonably compensate Settlement Class Counsel for resolving this Action efficiently while timely recovering the maximum amount available to the Settlement Class.

**4. Contingency and Risky Nature of Litigation**

The uncertain nature of contingency fees required Settlement Class Counsel to assume more risk than in cases where compensation is based on billable hours. The risk in prosecuting a data breach class action, judged by the novelty and complex issues discussed above, is an important consideration in determining an appropriate attorneys' fee award and is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys who prosecute them. This factor also embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *15 ("[m]any cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award"); *see also Brulee v. Dal Global Servs.*, LLC, No. CV 17-6433, 2018 U.S. Dist. LEXIS 211269, at *28 (C.D. Cal. Dec. 13, 2018) ("Attorneys are entitled to a larger fee award when their compensation is contingent in nature").

Here, Settlement Class Counsel undertook this Action on a purely contingent basis, with no assurance of recovery of costs or compensation for their time. Joint Decl. ¶ 35. As such, they assumed significant risk of nonpayment or underpayment. *Id*. Furthermore, the attorneys involved have foregone the ability to devote time to other cases and advanced their own funds to prosecute

the Action, all at the substantial risk it would yield no (or very little) recovery and leave them uncompensated for their time and out-of-pocket costs. *Id*. Despite these substantial risks, Settlement Class Counsel remained steadfast and chose to represent Plaintiffs on contingency. *See Pfeiffer*, 2022 U.S. Dist. LEXIS 125933, at *7 ("Because Class Counsel took this case on a contingency basis in a risky and still-developing area of law, this factor weighs in favor of the proposed attorneys' fee award."). Because Settlement Class Counsel invested substantial time, effort, and resources into the litigation of this risky and uncertain case with no guarantee or promise of return on their investment, such risk warrants an appropriate fee. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1380 (N.D. Ga. Mar. 20, 2019) ("[A] contingency fee arrangement often justifies an increase in the award of attorney's fees[.]").

**5. Settlement Class Counsel and Plaintiffs' Additional Counsel Devoted Extensive Time**

Settlement Class Counsel and additional Plaintiffs' counsel devoted extensive time prosecuting Plaintiffs' claims efficiently and effectively to ensure the best possible outcome for the Settlement Class could be achieved. Joint Decl. ¶¶ 33-34. Though the Court need not perform a lodestar analysis, even as a lodestar crosscheck, Settlement Class Counsel offer the combined lodestar for Settlement Class Counsel and additional Plaintiffs' counsel here is $152,955.00 reflecting for the 191.5 hours of combined attorney and paralegal time invested in the Action thus far. Joint Decl. ¶¶ 40, 42. This time included investigating and drafting the initial complaints in the Related Actions; drafting the motion to consolidate the Related Actions and appoint interim class counsel; drafting the consolidated complaint; drafting discovery; negotiating a complex Settlement Agreement, including the Notices and Claim Form; moving for and successfully obtaining Preliminary Approval; working in concert with the Settlement Administrator; monitoring the Notice Program and Claim Process; and preparing this Motion. *Id.* ¶ 39. As it

currently stands, if approved by the Court, the one-third of the Settlement Fund requested results in a multiplier of approximately 0.99. *Id.* ¶ 41. *See, e.g.*, *New England Carpenters Health Ben. Fund, et al. v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) (approving 8.3 lodestar multiplier).

Moreover, Settlement Class Counsel will spend additional time going forward preparing for, and appearing at, the Final Approval Hearing, overseeing the final weeks of the Claims Process, and handling all post-Settlement approval issues. Joint Decl. ¶ 42. Based on prior experience, Settlement Class Counsel estimate an additional 50 hours will be invested in this Action. *Id*. Factoring in that additional time further decreases the multiplier. Therefore, this Court should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case" and find Settlement Class Counsel's lodestar is reasonable and supports an appropriate valuation of the time spent. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. Dec. 26, 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel.").

These efforts, taken with the risk of no recovery, amply support the requested award in this case, and demonstrate that the attorneys' fees requested here have been well earned.

**6. Awards in Similar Cases**

The attorneys' fee award sought here is within the range of fees typically awarded in similar cases in the First Circuit and in this District in class actions involving non-reversionary all cash settlement funds. *See*, *e.g.*, *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090, 2023 U.S. Dist. LEXIS 93286, at *8 (D. Mass. Mar. 31, 2023) (awarding one-third); *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. June 6, 2025) (awarding a one-third attorneys'

fee in a data breach action); *In re Sovos Compliance Data Security Incident Litig.*, No. 1:23-cv12100 (ECF No. 51) (D. Mass. July 23, 2024) (same); *Kondo, et al. v. Creative Servs., Inc.*, No. 1:22-cv-10438-DJC, ECF No. 39 (D. Mass. Sept. 7, 2023) (same).

Additional examples of courts around the country awarding one-third for attorneys' fees in data breach settlements include: *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (approving 33.33% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), ECF No. 48 (same); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (same); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, ECF No. 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu N. Am.*, No. 6:22-cv-00106-CHB-HA, ECF No. 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litig.*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); and *Davidson v. Healthgrades Operating Co., Inc.*, No. 1:21-cv-01250-RBJ, ECF No. 50 (D. Colo. Aug. 22, 2022) (same).

**7. Public Policy Considerations**

Finally, "[t]he public benefits when attorneys undertake a complex commercial case that implicates consumer protections and data privacy. In addition to providing compensation to injured class members, the litigation and settlement of plaintiffs' claims incentivizes retailers to take stronger data-protection measures." *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472, 2022 U.S. Dist. LEXIS 102805, at *67 (S.D.N.Y. June 8, 2022); *see also In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *22-23 ("[T]here is a significant societal interest in

obtaining redress for . . . consumers whose harms cold not, given the cost of litigation, be pursued on an individual basis.”). While court-awarded fees must be reasonable, setting fees too low or randomly will create poor incentives to bringing large class action cases. *See In re GSE Bonds Antitrust Litig.*, No. 19- cv-1704, 2020 U.S. Dist. LEXIS 104842, at *24 (S.D.N.Y. June 16, 2020) (“Generally, public policy is served by ensuring a fee is large enough to incentivize lawyers to bring meritorious class actions in the future.”).

**D. Settlement Class Counsel’s Costs are Reasonable and Should Be Reimbursed.**

“Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation.” *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090-WGY, 2023 U.S. Dist. LEXIS 93286, at *7-8 (D. Mass. Mar. 31, 2023). Here, Settlement Class Counsel incurred $2,464.22 in litigation costs that were necessary and reasonable for the representation of the Settlement Class. Joint Decl. ¶ 45. These costs include the various court filing fees, service costs, legal research, and pro hac vice fees. *See*, *e.g.*, *Baptista*, 859 F. Supp. 2d at 244 (Lisi, J.) (reimbursing litigation costs for “filing fees, the cost of mediation, travel expenses, including airfare and overnight stays, out-of pocket fees for computerized legal research, printing and other minor expenses”).

**E. The Requested Service Awards Should Be Approved.**

Finally, the Settlement Class Representatives respectfully request approval of $2,500.00 Service Awards for each Settlement Class Representative. These awards (also referred to as incentive awards) recognize Plaintiffs instituted the actions, spent time communicating with Settlement Class Counsel, fulfilled litigation responsibilities, and took on the risks inherent with publicly attaching themselves to the lawsuit. *See*, *e.g.*, *In re Loestrin 24 Fe Antitrust Litig.*, 2020 U.S. Dist. LEXIS 125745, at *46-47 (“Because ‘a named plaintiff is an essential ingredient of any

class action, an incentive award can be appropriate to encourage or induce' participation in the lawsuit." (quoting *In re Solodyn Antitrust Litig.*, 2018 U.S. LEXIS 164688, at *2)); *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *24-25 ("Incentive awards serve an important function in promoting class action settlements[.]"). "In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also . . . rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allmerica Fin. Corp.*, No. 97-40204, 1999 U.S. Dist. LEXIS 7793, at *11-12 (D. Mass. May 19, 1999). These awards are in line with others that courts have approved. *Id*. (approving $5,000 each for the four representative plaintiffs); *see also In re Intuniv Antitrust Litig.*, 2022 U.S. Dist. LEXIS 13893, at *7 (approving $5,000 services awards); *Kodash v. Citizens Bank*, 2020 U.S. Dist. LEXIS 241588, at *2 n.2 (D.R.I. Dec. 23, 2020) (approving $15,000 incentive award). Here, Plaintiffs initiated lawsuits, agreed to serve as Settlement Class Representatives, and have been actively involved in the Action. Joint Decl. ¶ 29. Plaintiffs pursued the interests of the Settlement Class by undertaking responsibilities attendant to serving as class representatives, including, without limitation, periodically conferring with Settlement Class Counsel, providing relevant documents and information, and reviewing pleadings, Settlement documents, and other filings in the Action. *Id*. The information they provided Settlement Class Counsel was critical in determining the legal claims to be asserted. *Id*. Accordingly, given Plaintiffs' time and efforts in supporting the litigation, combined with the risks and burdens of serving as Settlement Class Representatives, the application for a $2,500.00 Service Award to each Settlement Class Representative should be granted.

## VIII. CONCLUSION

Plaintiffs and Settlement Class Counsel respectfully request the Court enter a Final Approval Order (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Rule 23(a) and (b)(3); (3) confirming Plaintiffs' appointment as Settlement Class Representatives; (4) confirming the appointments of Leigh S. Montgomery of Ellzey Kherkher Sanford Montgomery, LLP; Leanna A. Loginov of Shamis & Gentile P.A., and Grayson Wells of Stranch, Jennings & Garvey, PLLC as Settlement Class Counsel pursuant to Rule 23(g)(1); (v) confirming the appointment of Epiq as Settlement Administrator; (5) awarding Settlement Class Counsel $151,400.00 for attorneys' fees and costs; (6) awarding each Settlement Class Representative a $2,500.00 Service Award; (7) overruling timely objections, if any; and (8) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as Exhibit C, updating the form that is an exhibit to the Agreement.

Dated: March 30, 2026

Respectfully submitted,

*/s/ Grayson Wells*

J. Gerard Stranch, IV (admitted *pro hac vice*)
Grayson Wells (admitted *pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

Leigh S. Montgomery (admitted *pro hac vice*)
**ELLZEY KHERKHER SANFORD MONTGOMERY, LLP**
4200 Montrose Blvd., Ste. 200
Houston, Texas 77006
Tel: (888) 350-3931

Leanna A. Loginov (admitted *pro hac vice*)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 750
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Kensley R. Barrett, Esq.
**MARIN BARRETT & MURPHY**
1000 Chapel View Blvd, Suite 260
Cranston, RI 02920
Tel: (401) 228-8271
kb@marinbarrettmurphy.com

***Attorneys for Plaintiffs and the Proposed Class***

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

/s/ *Grayson Wells*
Grayson Wells (admitted *pro hac vice*)